UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| IN RE: | Bankruptcy Court |
| | Case No. HL 00-05841 |
| JAMES J.P. QUINN | |
|        Debtor. | |
| _____/ | |
| | |
| THE TEACHERS INSURANCE AND | |
| ANNUITY ASSOCIATION, | |
| | |
|        Appellant, | |
| v. | District Court Case No. 1:05-CV-49 |
| | |
| ROSE ELLEN BAREHAM, Chapter | HON. GORDON J. QUIST |
| 7 Trustee, | |
| | |
|        Appellee. | |
| _____/ | |
| | |
| JAMES J.P. QUINN, | |
| | |
|        Appellant, | |
| v. | District Court Case No. 1:05-CV-48 |
| | |
| ROSE ELLEN BAREHAM, Chapter | HON . GORDON J. QUIST |
| 7 Trustee, | |
| | |
|        Appellant. | |
| _____/ | |

**OPINION**

Pursuant to 28 U.S.C. § 158(a)(1), Debtor, James J.P. Quinn ("Quinn"), has appealed the United States Bankruptcy Court's September 30, 2003, order holding, in part, that Quinn's interest in a Teachers Insurance and Annuity Association ("TIAA" or "the TIAA") annuity is included in Quinn's bankruptcy estate. Intervenor, the TIAA, has also appealed the September 30, 2003, order as well as the United States Bankruptcy Court's November 30, 2004, order granting the TIAA's

motion to intervene and denying the TIAA's motion for reconsideration of the September 30, 2003, order.  For the reasons set forth below, the Court will reverse the bankruptcy court's order holding that the TIAA annuity is included in Quinn's bankruptcy estate.

## Facts and Procedural History

On July 24, 2000, Quinn filed a voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code.  Quinn listed as an asset his interest in a TIAA-CREF retirement plan (the "Plan") that he obtained through his employment with Michigan State University ("MSU") in its Department of Public Safety from 1968 through 1979.  The TIAA portion of the Plan is referred to as a guaranteed annuity.[1]  As an employee of MSU, Quinn was required to contribute to the Plan, and his contributions were allocated to the TIAA portion of the Plan.  MSU also made contributions to the TIAA portion of the Plan on behalf of Quinn.  As of the date of the bankruptcy filing, all of the funds in the Plan for Quinn's account were attributable to the TIAA portion of the Plan.  The TIAA contract was delivered in, and governed by, the law of the State of New York.

Quinn asserted that the TIAA annuity was either excluded from the property of the bankruptcy estate pursuant to § 541(c)(2) of the Bankruptcy Code or exempt pursuant to 522(d)(10)(E) of the Bankruptcy Code.[2]  The Chapter 7 Trustee ("Trustee") objected to both arguments.[3]  The bankruptcy court ordered that the issues of whether the TIAA annuity is a part of the bankruptcy estate and whether the annuity is exempt under § 522(d)(1)(E) be bifurcated and that

---

[1] A TIAA-CREF retirement plan consists of two separate annuity contracts, one issued by TIAA and the other issued by the College Retirement Equities Fund.  See In re Barnes, 264 B.R. 415, 418 (Bankr. E.D. Mich. 2001).  Only the TIAA portion of the Plan is at issue in this appeal.

[2] Unless otherwise noted, all statutory references are to the Bankruptcy Code, which is set forth in 11 U.S.C. §§ 101-1330.

[3] Quinn initially only asserted that the TIAA annuity was exempt under § 522(d)(10)(E) but later, after the Trustee filed the initial objection, argued that the TIAA annuity and other retirement assets were not part of the estate pursuant to § 541(c)(2).

2

the issue of whether the annuity became property of the estate be tried first. On October 4, 2001, Quinn and the Trustee submitted the matter on briefs and stipulated facts to the bankruptcy court. On September 30, 2003, the bankruptcy court issued an opinion and order concluding that the TIAA annuity was not excluded from the bankruptcy estate pursuant to § 541(c)(2).[4] See In re Quinn, 299 B.R. 450 (Bankr. W.D. Mich. 2003). The bankruptcy court held that Quinn's relationship with the TIAA was merely contractual and that the TIAA annuity was not a trust for purposes of § 541(c)(2). See id. at 546-48. The bankruptcy court thus concluded that the TIAA annuity was included in Quinn's bankruptcy estate.

Because the TIAA was not a creditor of Quinn and was not otherwise entitled to notice of the bankruptcy proceeding, it did not file a brief or participate in the litigation over whether the TIAA annuity was part of the bankruptcy estate. Apparently, within days after the bankruptcy court issued the September 30, 2003, order, the TIAA's counsel became aware of the order and advised the TIAA of the ruling. On October 10, 2003, TIAA filed a motion to intervene in the bankruptcy case, seeking both mandatory and permissive intervention in order to file a motion for reconsideration and otherwise participate in the case, and a motion for reconsideration of the September 30, 2003, order. On November 30, 2004, the bankruptcy court issued an opinion and order granting the TIAA's motion to intervene on a permissive basis and denying the TIAA's motion for reconsideration. With regard to intervention, the court found that permissive intervention was appropriate because, while the TIAA did not have any claim against the Trustee as a result of Quinn's bankruptcy, the TIAA could refuse to perform on the annuity contract in a subsequent turnover proceeding by the Trustee based upon the same arguments that Quinn made in opposing

---

[4]The bankruptcy court also held that Quinn's interest in the Ford Motor Savings and Stock Investment Plan for Salaried Employees was excluded from the estate pursuant to § 541(c)(2). However, that aspect of the bankruptcy court's ruling is not at issue in this appeal.

the Trustee's objection. Thus, the bankruptcy court reasoned, allowing intervention would promote judicial economy resolving all disputes regarding the TIAA annuity in a single proceeding. In re Quinn, No. HL 00-05810, slip op. at 3-4 (Bankr. W.D. Mich. Nov. 30, 2004). However, the bankruptcy court held that the TIAA should be permitted to intervene only with regard to the issue of whether the prior ruling was based upon clear errors of law and not to present new evidence because the evidence the TIAA sought to offer was not new or "previously unavailable evidence." Id. at 4-5. The bankruptcy court also concluded that the TIAA was not entitled to intervention as of right, but declined to give its reasons for that conclusion. See id. at 6. Finally, the bankruptcy court denied the TIAA's motion for reconsideration, concluding that Alexandre v. Chase Manhattan Bank, 61 A.D. 2d 537, 403 N.Y.S. 2d 21 (1978), did not support the TIAA's argument that the annuity constitutes a trust that could not be reached by creditors and that the recent enactment of the Public Employee Retirement Benefit Protection Act, M.C.L.A. § 38.1681, did not alter the bankruptcy court's previous analysis. See id. at 7-9.

## Standard of Review

In reviewing the bankruptcy court's decision that § 541(c)(2) does not exclude the TIAA annuity from the bankruptcy estate, this Court applies a clearly erroneous standard to the bankruptcy court's findings of fact and a de novo standard of review to its conclusions of law. Trident Assoc. Ltd. P'ship v. Metro. Life Ins. Co. (In re Trident Assoc. Ltd. P'ship), 52 F.3d 127, 130 (6th Cir. 1995); Holly's, Inc. v. City of Kentwood (In re Holly's, Inc.), 178 B.R. 711, 713 (W.D. Mich. 1995).

## Discussion

As mentioned above, in addition to appealing the bankruptcy court's determination that Quinn's interest in the TIAA annuity is not excluded from Quinn's bankruptcy estate pursuant to § 541(c)(2), the TIAA also contends that the bankruptcy court erred in concluding that the TIAA was

4

not entitled to mandatory intervention. The TIAA further contends that the bankruptcy court's decision to grant the TIAA permissive intervention solely for the purpose of binding the TIAA to the bankruptcy court's ruling that the TIAA annuity was not excluded from the bankruptcy estate violated the TIAA's due process rights. The Trustee also takes issue with the bankruptcy court's ruling on the TIAA's motion to intervene, arguing that the bankruptcy court abused its discretion in granting the TIAA permissive intervention. Because the Court concludes that the bankruptcy court took an unduly narrow view of what constitutes a trust for purposes of § 541(c)(2), the Court need not consider whether the bankruptcy court's rulings on permissive and mandatory intervention were erroneous.[5]

Section 541(c)(2), which governs the issue raised in this appeal, provides that the following is not included in the debtor's estate created by § 541(a):

> A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

11 U.S.C. § 541(c)(2). As the bankruptcy court observed, § 541(c)(2) is a narrow exception to the broad sweep of the estate-creating mechanism of § 541(a)(1), which provides that the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). In concluding that the TIAA annuity does not fall within § 541(c)(2), the bankruptcy court expressly adopted the analysis of the court in In re Barnes, 264 B.R. 415 (Bankr. E.D. Mich. 2001), which held that § 541(c)(2) does not apply to the TIAA annuity at issue in that case because there is no trust relationship between the debtor and the

---

[5] Even if the Court were to consider the issue of intervention, it would not address the Trustee's argument that the bankruptcy court abused its discretion because the Trustee did not appeal the bankruptcy court's ruling on permissive intervention. See Nat'l Mass Media Telecomm. Sys., Inc. v. Stanley (In re Nat'l Mass Media Telecomm. Sys., Inc.), 152 F.3d 1178, 1181 n.4 (9th Cir. 1998); United States v. Slater, No. 02-4200, 2002 WL 31126713, at *1 (4th Cir. Sept. 26, 2002) (per curiam).

5

TIAA. See Quinn, 299 B.R. at 453-54 (discussing Barnes). Apart from its reliance on Barnes, the bankruptcy court shored up its analysis by consulting the legislative history of § 541(c)(2) to determine its purpose, which, according to the bankruptcy court, is to exclude debtors' interests in traditional spendthrift trusts from the bankruptcy estate:

> The question is why did Congress create this exception.
>     The answer lies in the word "trust." The legislative history indicates that the reference to "trust" in subsection (c)(2) is in fact a reference to spendthrift trusts.
>     Paragraph (2) of subsection (c), however, preserves restrictions on transfer [sic] of a spendthrift trust to the extent that the restriction is enforceable under applicable bankruptcy law.
> H.R. Rep. No. 95-595, 369 (1977), *see also* S. Rep. No. 989, 83 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5963, 6325, 5787, 5869.
>     The Supreme Court described these excerpts from the Congressional record as "brief" and "meager." *Patterson v. Shumate*, 504 U.S. 753, 761-62, 112 S. Ct. 2242, 2248, 119 L. Ed. 2d 519 (1992). However, when considered in the overall context of what Congress intended to accomplish through the enactment of Section 541, the reference in the legislative history speaks volumes.

Id. at 456. The bankruptcy court went on to conclude that Quinn's interest in the TIAA annuity was not a beneficial interest in a trust, but rather was simply "contractual" because "the contributions were used to pay premiums on an annuity issued by the [TIAA]," and "[i]t is clear from the face page of the annuity purchased from TIAA that Debtor's interest in the annuity is simply contractual." Id. at 459.

In its analysis of § 541(c)(2), this Court takes its direction from the Supreme Court's decision in Patterson v. Shumate, 504 U.S. 753, 112 S. Ct. 2242 (1992), which, except for referring to it dismissively as not being a thorough analysis, see 299 B.R. at 454, 456, the bankruptcy court largely ignored in determining the scope of § 541(c)(2). Prior to the Patterson decision, the circuits were split on the meaning of the phrase "applicable nonbankruptcy law," with some courts holding that it encompassed only state spendthrift trust law, and others, including the Sixth Circuit, holding that it referred to any law, state or federal, such as the Employee Retirement Income Security Act of 1974

6

("ERISA"). See generally Meehan v. Wallace (In re Meehan), 102 F.3d 1209, 1212 n.7 (11th Cir. 1997) (noting a split among the Ninth, Eleventh, Eighth, and Fifth Circuits, on the one hand, and the Tenth, Third, Sixth, and Fourth Circuits on the other). The issue in Patterson was whether an anti-alienation provision in what the Court termed an "ERISA-qualified pension plan" constituted a restriction on transfer under "applicable nonbankruptcy law" for purposes of § 541(c)(2). The Court held that the statute was clear and unambiguous, and that "[p]lainly read, the provision encompasses any relevant nonbankruptcy law, including federal law such as ERISA." Patterson, 504 U.S. at 759, 112 S. Ct. at 2247. The Court found that the anti-alienation provision in the "ERISA-qualified plan"[6] satisfied the requirements of § 541(c)(2) because both ERISA and the Internal Revenue Code ("IRC") required that the plan contain restrictions on the participant's beneficial interest in the plan. See id. In addition, the Court found that the transfer restrictions were enforceable as required by § 541(c)(2), noting that ERISA requires trustees or fiduciaries to discharge their duties in accordance with plan documents; ERISA specifically authorizes a civil action by plan participants and others to enjoin any act or practice that violates ERISA or the terms of the plan; and the Court had "vigorously" enforced ERISA's restrictions on alienation in a prior non-bankruptcy setting. See id. at 760, 112 S. Ct. at 2247. The Court rejected the bankruptcy trustee's reliance upon the statute's legislative history to limit "applicable nonbankruptcy law" to state law of spendthrift trusts because the statute is clear on its face and because the legislative history, which the Court described as "brief" and "meager," did not show "that Congress intended to *exclude* other state and federal law

---

[6]Following Patterson, courts have debated the meaning of the term "ERISA-qualified plan" coined by the Supreme Court in Patterson because ERISA does not speak in terms of "qualification." See, e.g., Kaler v. Craig (In re Craig), 204 B.R. 756, 758-59 (D.N.D. 1997). Rather, a "qualified plan" generally refers to a plan that is tax "qualified" under the Internal Revenue Code. See id. at 758. This point is not material to the Court's analysis because, as noted below, the TIAA annuity is not an ERISA plan, although it is a qualified retirement plan under § 403(b) of the Internal Revenue Code.

7

from the provision's scope." Id. at 761-62, 112 S. Ct. at 2248.  Finally, the Court noted that its holding advanced a number of policies, including "ensur[ing] that the treatment of pension benefits will not vary based on the beneficiary's bankruptcy status." Id. at 764, 112 S. Ct. at 2249.

Patterson is not directly applicable to the instant case because the MSU Plan for which the TIAA annuity was issued is a "governmental plan" as defined by 29 U.S.C. § 1002(32) and is therefore exempt from regulation under ERISA.  See 29 U.S.C. § 1003(b)(1).  While most cases applying Patterson have involved ERISA plans, courts have followed Patterson in determining whether a non-ERISA governmental plan meets the requirements of § 541(c)(2).  For example, in In re Silviera, 186 B.R. 168 (Bankr. D. Mass. 1995), the court stated:

> In *Patterson*, the Supreme Court held that, "plainly read," section 541(c)(2) does not limit the phrase "applicable nonbankruptcy law" to state and in particular state spendthrift trust law, 504 U.S. at 758, 112 S. Ct. at 2246-47, and that the debtor's ERISA-qualified pension plan, which did not satisfy the requirements of a spendthrift trust but which had the anti-alienation provision required for qualification under section 206(d) of ERISA, 29 U.S.C. § 1056(d)(1), satisfied the literal terms of section 541's transfer restriction because the restriction was enforceable under ERISA. *Id.* at 549.  Referring to pension plans established by governmental entities and churches, the Court noted in *dicta* that a debtor's interest in certain plans may not be excluded from the bankruptcy estate because of the absence of anti-alienation provisions enforceable under applicable bankruptcy law.  504 U.S. at 762-63, 112 S. Ct. at 2248-49.  Consequently, the Supreme Court's decision limits the focus under section 541(c)(2) to finding three elements: 1) a beneficial interest belonging to the Debtor in a trust; 2) a restriction on the transfer of the Debtor's beneficial interest in the trust; and 3) the enforceability of the restriction under applicable nonbankruptcy law.

Id. at 171-72.  See also Taunt v. Gen. Ret. Sys. of the City of Detroit (In re Wilcox), 233 F.3d 899, 904 (6th Cir. 2000) ("An inquiry under § 541(c)(2) normally has three parts: First, does the debtor have a beneficial interest in a trust?  Second, is there a restriction on the transfer of that interest? Third, is the restriction enforceable under nonbankruptcy law?").  The debtor in In re Silviera was a participant in Massachusetts' contributory retirement system for public employees, which was

funded by mandatory payroll deductions that were placed into an annuity account for each employee. The funds were subject to a statutory anti-alienation provision which precluded creditors from reaching the funds and which precluded participants from assigning their rights in the funds. The court found that the debtor had "a beneficial interest in a statutory trust that is subject to a restriction that is enforceable under applicable nonbankruptcy law." Id. at 172. See also Whetzal v. Alderson, 32 F.3d 1302, 1304 (8th Cir. 1994) (citing Patterson and concluding that the debtor's interest in a lump sum payment from the federal Civil Service Retirement System which contained restrictions similar to those at issue in Patterson was excluded from the debtor's estate).

In this case, there is no dispute that the TIAA annuity both restricts the participant's access to Plan benefits and contains an anti-alienation provision:

> 15. **No Assignment**.  Any assignment or pledge of this contract or of any benefits hereunder will be void and of no effect.
>
> 16. **Protection Against Claims of Creditors**.  The benefits, options, rights, and privileges accruing to any Beneficiary will not be transferrable or subject to surrender, commutation, or anticipation, except as may be otherwise endorsed on this contract.  To the extent permitted by law, annuity and other benefit payments will not be subject to the claims of any creditor of any Beneficiary or to execution or to legal process.

(TIAA Retirement Annuity Contract, Gen. Provisions at 7.)  Because the TIAA annuity is part of an employer sponsored, tax-deferred retirement plan under 26 U.S.C. § 403(b), the IRC mandates the inclusion of such restrictions.  See 26 U.S.C. § 401(g) (stating that an annuity for purposes of § 403 "does not include any contract or certificate . . . which is transferrable"); Treas. Reg. § 1.401-9(b)(1)(I) ("[A]n annuity contract will be subject to the tax treatment under section 403(b) only if it satisfies the requirements of section 401(g) and this section.  Any certificate or contract in order to satisfy the provisions of this section must expressly contain the provisions that are necessary to make such certificate or contract not transferable within the meaning of this paragraph.").

9

The transfer restrictions in the TIAA annuity are also "enforceable under applicable nonbankruptcy law." In Taunt (In re Wilcox), supra, the Sixth Circuit held that in order for a restriction on transfer to be enforceable, it is not necessary that the applicable law provide a statutory right of action. See Taunt, 233 F.3d at 905. Rather, the court noted that Patterson identified other indicia of enforceability in addition to a statutory right of action, including "(1) ERISA's statutory requirement that plan trustees and fiduciaries discharge their duties, and (2) the Supreme Court's own enforcement of ERISA's anti-alienation provision." Id. Although there is no statutory enforcement provision, the Court finds no reason why provisions of the IRC requiring transfer restrictions in an annuity as a condition of favorable tax treatment cannot be considered applicable nonbankruptcy law. See In re Domina, 274 B.R. 829, 833 (Bankr. N.D. Iowa 2002) (concluding that IRC § 457(g) and the Iowa Administrative Code were applicable nonbankruptcy law that created enforceable restrictions on the debtor's transfer of his beneficial interest in a deferred compensation plan). Moreover, the transfer restrictions contained in the annuity are enforceable under one or more Michigan statutes. For example, § 3 of the Michigan Public Employee Retirement Benefit Protection Act ("MPERBPA") provides that "[t]he right of a member or retirant of a retirement system to a retirement benefit shall not be subject to execution, garnishment, attachment, the operation of bankruptcy or insolvency laws, or other process of law and shall be unassignable." M.C.L.A. § 38.1683. Similarly, § 40(1) of the Michigan State Employees' Retirement Act, prior to the enactment of the MPERBPA, provided that:

> The right of a person to a pension, an annuity, a retirement allowance, any optional benefit, any other right accrued or accruing to any person under the provisions of this act, the various funds created by this act, and all money and investments and income of the funds . . . shall not be subject to execution, garnishment, attachment, the operation of bankruptcy or insolvency laws, or other process of law, and shall be unassignable except as otherwise provided in this act.

10

M.C.L.A. § 38.40(1). The Trustee does not dispute that, because Quinn is a participant in MSU's retirement plan, these statutes apply to Quinn's interest in the retirement plan. Finally, because the TIAA annuity is governed by New York law, the law of that State also provides applicable nonbankruptcy law for purposes of § 541(c)(2). Section 3212(d) of New York's Insurance Law provides similar restrictions on transfers for annuities. See N.Y. Ins. Law § 3212(d)(1), (3); Richardson v. TIAA/CREF, 123 B.R. 540, 543 (E.D.N.C. 1991) ("Under New York law, anti-alienation and assignment provisions are enforceable.") (citing Alexandre v. Chase Manhattan Bank, N.A., 61 A.D.2d 537, 403 N.Y.S.2d 21 (1978)). Thus, the TIAA annuity contains restrictions on transfer that are enforceable under applicable nonbankruptcy law.

The final issue is whether the TIAA annuity constitutes a trust. The term "trust" is not defined in § 541(c)(2) or elsewhere in the Bankruptcy Code. In concluding that the TIAA annuity is not a trust, the bankruptcy court cited the decision in In re Barnes, 264 B.R. 415 (Bankr. E.D. Mich. 2001), and concluded that there was no trust relationship between Quinn and TIAA because Quinn's interest in the annuity is "simply contractual." In Barnes, the debtor, like Quinn, was an employee of MSU and a participant the Plan. The debtor had an interest in both a TIAA annuity and a CREF annuity. In a lengthy opinion, the court held that the CREF annuity was excluded from the estate under § 541(c)(2) but the TIAA annuity was not because only the CREF annuity constituted a trust. In its analysis of the issue, the court first determined that, although several courts, including the Supreme Court in Patterson, arguably dispensed with the trust requirement of § 541(c)(2) and instead focused their inquiries solely upon whether the plans at issue were "ERISA-qualified" plans with anti-alienation provisions, § 541(c)(2) still requires the existence of a trust that meets the requirements of an express trust. See 264 B.R. at 421-29. The court then examined the provisions of the CREF annuity contract and found that it exhibited sufficient indicia of a trust because the

11

value of the annuity was not guaranteed, but rather depended, at least in part, upon the performance of CREF's investments. See id. at 434. The court reasoned that the transfer of risks and benefits to the debtor was a "strong indication that the 'transferee' – i.e., the Debtor – holds an equitable interest in CREF's portfolio." Id. On the other hand, the court concluded that the TIAA contract did not reflect a trust relationship because each premium payment purchased a guaranteed annuity amount and the benefit was not tied to the performance of TIAA's investment portfolio. Id. at 435. In light of that fact, the court concluded that there was no basis for concluding that TIAA was under any obligation to use the premium payments for the benefit of the debtor because the value of the debtor's interest was fixed at the time TIAA received the premium and "TIAA was under no contractual obligation to invest the payments in such a manner as to protect or benefit the Debtor's economic well-being." Id. at 436.

The Bankruptcy Appellate Panel for the Sixth Circuit followed Barnes in Rhiel v. Adams (In re Adams), 302 B.R. 535 (B.A.P. 6th Cir. 2003). The debtors in that case participated in separate 403(b) retirement plans that used qualified annuities. The plans were ERISA plans but, as 403(b) plans, were not subject to ERISA's trust requirements. The court found no basis in either ERISA or the IRC for concluding that the annuities were trusts because "the federal statutory framework does not compel, or even imply, the existence of a trustee in plans funded by tax-sheltered annuities." Id. at 544.[7]

In contrast to the literal interpretation of the term "trust" espoused in Barnes and Adams, other courts have held that annuities, and in particular, TIAA annuities, are excluded by § 541(c)(2) because they constitute, or are equivalent to, trusts. For example, in Morter v. Farm Credit Services,

---

[7]Because Adams was a decision of a Bankruptcy Appellate Panel, it is equivalent to review by a district court and thus is not binding upon this court. See Specker Motor Sales Co. v. Eisen, 393 F.3d 659,663 n.3 (6th Cir. 2003).

12

937 F.2d 354 (7th Cir. 1991), the court held that the debtor's interest in Purdue University's TIAA-CREF retirement plan was excluded from the estate. Essentially, the court concluded that so long as a retirement plan possesses the characteristics of a spendthrift trust, it should be excluded from the estate:

> [T]he plain language of section 541(c)(2) does not require that a retirement plan be a "traditional" spendthrift trust. We agree with the Fourth Circuit's reasoning in [McLean v. Central States, Southeast and Southwest Areas Pension Fund, 762 F.2d 1204 (4th Cir. 1985)] that section 541(c)(2)
>> should [not] be confined in its recognition of enforceable transfer restrictions to those found in "traditional" spendthrift trusts. The language of § 541(c)(2) does not suggest such a limitation, and the legislative history reveals only that the provision has the unambiguous purpose of preserving enforceable transfer restrictions in spendthrift trusts. . . .
>
> 762 F.2d at 1207 n.1. Even in cases in which courts have included retirement plans within the bankruptcy estate, there has been a willingness to exclude the plan if it is employer-created and controlled and, therefore, analogous to a spendthrift trust.
>
> Moreover, in every decision we could find that addressed the very pointed question whether TIAA is a spendthrift trust under New York law, the answer was a resounding "yes." *See, e.g., In re Reynolds*, No. 87-1515311F, slip op. (Bankr. W.D. Ark., September 18, 1989); *In re Montgomery*, 104 B.R. 112 (Bankr. N.D. Iowa 1989); *In re Woodward*, No. 3-86-03344(3), A.P. No. 3-87-0036, slip op. (Bankr. W.D. Ky., February 16, 1988), *aff'd*, No. 3-86-03344(3)7 Civil Action C88-0161-L(A), slip op. (W.D. Ky., June 24, 1988); *In re Braden*, 69 F.R. 93 (Bankr. E.D. Mich. 1987). In addition, two New York state courts have held that the TIAA-CREF plan has all the characteristics of a spendthrift trust necessary to allow the plan to be excluded under section 541(c)(2). *See Matter of Aurora G. v. Harold Aaron G.*, 98 Misc.2d 695, 414 N.Y.W.2d 632 (1979); *Alexandre v. Chase Manhattan Bank*, 61 A.D.2d 537, 403 N.Y.S.2d 21 (1978).
>
> The proper inquiry under section 541(c)(2), then, is not whether the accumulated funds are in a "traditional" spendthrift trust, but whether the retirement plan bars the beneficiary and his creditors from reaching the funds. If it does, the plan is tantamount to a spendthrift trust under state law. When we look at a retirement plan to determine whether it is a spendthrift trust, the fact that the plan administrators might have to dip into the fund to make up any shortfall is not as important to the analysis as the extent of access to the plan and who has that access.

Id. at 357-58 (citations in first paragraph omitted). See also In re Hipple, 225 B.R. 808, 815 (Bankr. N.D. Ga. 1996) (concluding that the debtor's TIAA/CREF accounts satisfied the requirements for valid and enforceable spendthrift trusts under Georgia law); In re Lyons, 148 B.R. 88, 93 (Bankr.

13

D.D.C. 1992) (noting that courts have routinely "determined that TIAA/CREF retirement plans are 'spendthrift trusts' under New York law and thus were excluded from the debtor's estate pursuant to 11 U.S.C. § 541(c)(2)"); In re Bennett, 185 B.R. 4, 6 (Bankr. E.D.N.Y. 1995)( holding that the debtor's interests in TIAA/CREF retirement annuities were excluded under § 541(c)(2) because the retirement plans were ERISA plans that contained enforceable anti-alienation provisions).[8] In In re Schuster, 256 B.R. 701 (Bankr. D.N.J. 2000), the court held that two annuities were trusts as defined by the Restatement of Trusts because "[w]hen the Debtor purchased these annuities from the insurance companies, he did so with the expectation that the money would be paid to him at some later date in accordance with the terms of the annuity contract." Id. at 703.  There is no indication in the court's opinion that the annuities were issued pursuant to a tax qualified retirement plan, but rather, it appears that debtor purchased the annuities outside of such a plan.  The court rejected as contrary to Patterson the trustee's suggestion that the absence of restrictions on transfer in the annuities themselves and the debtor's ability to surrender the annuities precluded the annuities from being excluded under § 541(c)(2).  Other courts, when addressing the trust requirement, have found that while annuities issued in connection with a tax-qualified 403(b) plan are not trusts, they should be excluded under § 541(c)(2) in light of the policies identified in Patterson.

> We see no reason to treat a corporate pension plan differently than a 403(b) annuity pension plan.  Both are set up by a third party, utilize the tax vehicles provided by the Internal Revenue Code to accumulate funds on a tax-free basis and contain anti-alienation clauses to prevent creditors from reaching a debtor's interests in the plan.

---

[8] In fact, to this Court's knowledge, with the exception of the court in Barnes, the bankruptcy court in this case, and the court in Richardson v. TIAA/CREF, 123 B.R. 540 (E.D.N.C. 1991), every court that has considered a TIAA annuity has found that it is excluded under § 541(c)(2). The Richardson court concluded that the TIAA/CREF annuities were not excluded under § 541(c)(2) because they had provisions allowing for cash surrender at any time before annuity payments began and the debtor could withdraw funds at any time, thus giving the debtor "effective control over the distribution or termination of the trust in that he may reach the funds of the trust and may surrender the annuities for cash." Id. at 543. As noted below, the TIAA annuity in this case does not provide for cash surrender or loans and Quinn's access to the funds is severely limited, thus distinguishing this case from Richardson. Moreover, the Richardson court acknowledged that the annuities were trusts.

14

> We further conclude that this broader view of § 541(c)(2) is supported by the Congressional goal of protecting pension benefits. *See Guidry v. Sheet Metal Workers Nat. Pension Fund*, 493 U.S. 365, 110 S. Ct. 680, 107 L.Ed.2d 782 (1990).

Skiba v. Gould (In re Gould), 322 B.R. 741, 744 (Bankr. W.D. Pa. 2005). The Gould court echoed Judge Latta's dissent in Adams explaining why there is no practical reason to treat employer-sponsored ERISA plans that use trusts differently from those plans that do not use trusts:

> The majority's reading is inconsistent with the clear intent of Congress that ERISA-qualified pension plans not be subject to creditor claims.
> Outside of bankruptcy law, I find no functional distinction between the protections afforded to beneficiaries of ERISA-qualified pension plans in which assets are held in trust and those in which assets are used to purchase annuity contracts. Outside of bankruptcy, no creditor of the Adams would be able to reach the debtors' beneficial interests in their pension plans to satisfy claims, and this is true not because these interests are exempt from execution pursuant to state law, but because they are exempt from execution pursuant to federal law. *See Guidry v. Sheet Metal Workers Nat. Pension Fund*, 493 U.S. 365, 110 S. Ct. 680, 107 L.Ed.2d 782 (1990) (permitting no equitable exception to ERISA's anti-alienation provision). The filing of a bankruptcy case should not change this result.
> In *Patterson v. Shumate*, the Supreme Court held that "the antialienation provision required for ERISA qualification . . . constitutes an enforceable transfer restriction for purposes of § 541(c)(2)'s exclusion of property from the bankruptcy estate." 504 U.S. at 759, 112 S.Ct. 2242. Earlier in that opinion, the Court pointed out that "[t]he natural reading of the provision [§ 541(c)(2)] entitles a debtor to exclude from property of the estate any interest in *a plan* or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law." *Id.* at 758, 112 S. Ct. 2242. (emphasis added). While it is true that the specific issue before this Panel was not before the Court in *Shumate*, and thus that the reference to "the plan" may be merely dicta, I think that the reference actually illumines the Court's understanding of the intent of Congress expressed both in ERISA and the Bankruptcy Code. The Court, recalling its previous refusal in *Guidry* to recognize any exceptions to ERISA's anti-alienation provisions outside the bankruptcy context, asserted that its holding gave "full and appropriate effect to ERISA's goal of protecting pension benefits," and that it furthered the important policy underlying ERISA of uniform treatment of pension benefits. *Id.* at 764-65, 112 S. Ct. 2242. Each of these considerations applies with respect to plans that are not required to hold certain assets in trust.
> The majority has advanced no policy considerations that support their more restrictive reading of 541(c)(2). Instead their conclusion rests solely upon the literal requirement that a debt's beneficial interest be held "in a trust." This emphasis on the asserted plain meaning of one section of the Bankruptcy Code fails to give proper deference to the unqualified prohibition on alienation found in ERISA. "Where there

15

> is no clear intention otherwise, a specific statute will not be controlled by a general one." *Morton v. Mancari*, 417 U.S. 535, 550-51, 94 S. Ct. 2474, 2482-83, 41 L.Ed.2d 290 (1974) quoted in *Guidry*, 493 U.S. at 375, 110 S. Ct. 680. It is not section 541(c)(2) that excludes a debtor's beneficial interest in an ERISA-qualified plan from the bankruptcy estate, but rather the anti-alienation provision itself which excludes it.

Adams, 302 B.R. at 547-48 (Latta, J., dissenting).

This Court agrees with Judge Latta's observations and finds them applicable in this case. Because of the transfer restrictions contained in the annuity contract and the state law statutory restrictions, no creditor could reach Quinn's interest in the annuity outside of bankruptcy. Also, the contract places significant restrictions upon Quinn's ability to access the funds. As required by IRC § 403(b)(11), the annuity provides for distributions only when the participant: (1) reaches age 59 ½; (2) ceases his employment; (3) dies; (4) becomes disabled; or (5) suffers a "financial" hardship. (TIAA Retirement Annuity Contract at 995.1-DA, E5.) Moreover, the contract does not provide for cash surrender or loans. (Id. at 1000.17.) These features render the TIAA annuity functionally indistinguishable from a spendthrift trust, or at least from an ERISA trust. Thus, it is of no consequence to either Quinn or his creditors (outside of bankruptcy) whether or not his interest in the retirement plan is held in a formal or traditional trust.[9]

---

[9] As Judge Latta noted in Adams, the Court in Patterson stressed the importance of the anti-alienation requirement while impliedly suggesting by its use of the phrase "plan or trust" that an actual trust is not essential to the operation of § 541(c)(2). Although the reference to a "plan" was *dicta* because the Court was not confronted with the trust issue, in rejecting the trustee's argument that its interpretation of § 541(c)(2) rendered § 522(d)(10)(E) superfluous, the Court noted that "§ 522(d)(10)(E) exempts from the bankruptcy estate a much broader category of interests than § 541(c)(2) excludes." Patterson, 504 U.S. at 762, 112 S. Ct. at 2249. As examples of interests included in § 522(d)(10)(E) but not in § 541(c)(2), the Court cited government and church plans exempted from Subchapter I of ERISA, including the anti-alienation requirement of ERISA § 206(d)(1), and individual retirement accounts under IRC § 408 that are specifically exempt from ERISA's antialienation requirement. See id. at 762-63, 112 S. Ct. at 2249. It is interesting to note that Court did not also cite what would be obvious if an actual trust is required – that § 522(d)(10)(E) would include any retirement plan (both ERISA and non-ERISA) not maintained pursuant to a trust.

The fact that the MSU Plan is not an ERISA plan should not affect the application of § 541(c)(2), even though Congress left the States to regulate their own retirement plans, because protecting state employees' retirement benefits is consistent with Congress' policy concerns for protecting the retirement benefits of employees, whether public or private.  The result of excluding the TIAA annuity from Quinn's bankruptcy estate is also consistent with the policy expressed in Patterson of preventing creditors from "engag[ing] in strategic manipulation of the bankruptcy laws in order to gain access to otherwise inaccessible funds."  Patterson, 504 U.S. at 764, 112 S. Ct. at 2250.  That is, it would make no sense to preclude creditors from using bankruptcy against private-sector employees in order to gain access to protected retirement funds while allowing creditors to use bankruptcy for that purpose against public employees.  Accordingly, given that the TIAA annuity is tantamount to a trust, the Court concludes that it is excluded from Quinn's estate under § 541(c)(2).

## Conclusion

For the foregoing reasons, the Court will reverse the bankruptcy court's September 30, 2003, order holding that the TIAA annuity is included in Quinn's bankruptcy estate.

An Order consistent with this Opinion will be entered.


Dated: July 15, 2005                                      /s/ Gordon J. Quist
                                                         GORDON J. QUIST
                                                   UNITED STATES DISTRICT JUDGE